IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


ROSE M. DASS,                           )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    Civ. No. 04-938-SLR
                                        )
JO ANNE BARNHART ,                      )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION,                         )
                                        )
            Defendant.                  )

_____

Gary L. Smith, Esquire.  Counsel for Plaintiff.

Colm F. Connolly, United States Attorney and David F. Chermol,
Special Assistant United States Attorney, United States
Attorney's Office, Wilmington, Delaware.  Counsel for Defendant.
Of Counsel:  Donna L. Calvert, Regional Chief Counsel Social
Security Administration, Philadelphia, Pennsylvania.

_____


**MEMORANDUM OPINION**


Dated: September 16, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

Plaintiff Rose M. Dass filed this action against defendant Jo Anne Barnhart, Commissioner of Social Security, on August 13, 2004.  (D.I. 1)  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a decision by defendant denying her claim for disability income benefits under § 216(i) of the Social Security Act.  (Id.)  Currently before the court are the parties' cross motions for summary judgment.  (D.I. 13, 16)  For the reasons stated below, the court will remand for further proceedings.

## II.   BACKGROUND

### A.   Procedural Background

On February 8, 2002, plaintiff filed an application for disability insurance benefits due to depression, anxiety and pain in the left foot.[1]  (D.I. 9 at 102)  Plaintiff claimed that "depression/anxiety makes me unable to perform daily functions, unable to concentrate and fatigued."  (Id. at 103)  The claim was denied initially and upon review because it was determined that her ailments were not severe enough to keep plaintiff from working.  (Id. at 63)  Plaintiff requested a hearing before an

---

[1] The record contains medical records and reports for treatment regarding the left foot.  This evidence is not considered in this opinion because the left foot is expressly rejected by the plaintiff in her motion for summary judgment as the cause of her disability.

administrative law judge ("ALJ").  The hearing was held on
October 28, 2003.  (D.I. 9 at 32)  On November 21, 2003, the ALJ
denied plaintiff's claim.  (Id. at 11)  The ALJ found the
following:

1.   The claimant meets the nondisability requirements
     for a period of disability and Disability
     Insurance Benefits set forth in Section 216(i) of
     the Social Security Act and is insured for
     benefits through the date of this decision.
2.   The claimant has not engaged in substantial
     gainful activity since the alleged onset of
     disability.
3.   The claimant has an impairment or a combination of
     impairments considered "severe" based on the
     requirements in the Regulations: a left ankle
     fracture status post two surgical procedures,
     post-traumatic arthritis in the left ankle, a
     right patellofemoral pain syndrome, a somatoform
     disorder, a major depression and a generalized
     anxiety disorder (20 CFR § 404.1520(b)).
4.   These medically determinable impairments do not
     meet or medically equal one of the listed
     impairments in Appendix 1, Subpart P, Regulation
     No. 4.
5.   The undersigned finds the claimant's allegations
     regarding her limitations are not totally credible
     for the reasons set forth in the body of the
     decision.
6.   The undersigned has carefully considered all of
     the medical opinions in the record regarding the
     severity of the claimant's impairments (20 CFR §
     404.1527).
7.   The claimant has the following residual functional
     capacity: to perform light work, which entails
     lifting up to 20 pounds with frequent lifting of
     no more than 10 pounds. From a nonexertional
     standpoint, the claimant would be limited to
     performing simple, routine tasks, involving only
     minimal interaction with others.
8.   The claimant is unable to perform any of her past
     relevant work (20 CFR § 404.1565).
9.   The claimant is a "younger individual between the
     ages of 45 and 49" (20 CFR § 404.1563).
10.  The claimant has a "high school (or high school

2

> equivalent) education" (20 CFR § 404.1564).
>
> 11. The claimant has no skills from any past relevant work that would be transferable to jobs within her residual functional capacity (20 CFR § 404.1568).
>
> 12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).
>
> 13. Although the claimant's nonexertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a mail clerk (private sector) (there are 157,000 such jobs existing nationally and 850 such jobs in Delaware), library clerk (entry level) (111,000 nationally and 285 statewide), and cleaner (425,000 nationally and 1,200 statewide).
>
> 14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Id. 25-26)  On June 15, 2004, the Appeals Council declined to review the ALJ's decision and his decision became the final decision of the Commissioner.  (Id. at 4)

**B.   Facts Evinced At The Administrative Law Hearing**

Plaintiff is a 48 year old female who is five foot eight inches tall and weighs approximately 230 pounds.  (Id. at 40) Plaintiff has a high school education and her past employment included clerical work for Nation's Bank, Bank of America.  (Id. at 36-37)

Plaintiff alleges she is disabled as of August 2000 due to a psychological disability stemming from the emotional stress of her family situation, most notably that her daughter was

3

diagnosed with HIV.  (<u>Id.</u> at 41)  Plaintiff states that she
cannot return to work due to her nerves, a lack of concentration
and a dislike for being around people.  (<u>Id.</u> at 42)  Plaintiff
believes she cannot work an eight hour day.  (<u>Id.</u> at 53)
Plaintiff reasons that she does not have the concentration to
work because her mind wanders all the time and she worries "about
everything."  (<u>Id.</u> at 49)  Plaintiff is more comfortable being at
home than anywhere else and her anxiety attacks occur more often
when she is "out and around people."  (<u>Id.</u> at 42, 44)

Plaintiff regularly sees Dr. Alan Seltzer, Ph.D., every
three weeks.  (<u>Id.</u> at 42)  In addition, plaintiff sees a
psychologist every six weeks.  (<u>Id.</u> at 43)  Plaintiff complains
of anxiety consisting of panic attacks once or twice a month.
(<u>Id.</u> at 41)  During a panic attack, plaintiff's heart rate
increases and she begins to sweat and feels as if she is close to
fainting.  (<u>Id.</u> at 41)  Plaintiff states these attacks mainly
occur when she is out in public.  (<u>Id.</u> at 44)  In her letter
requesting a hearing, plaintiff stated she was having "more
frequent anxiety/panic attacks" and they "last until I feel like
I'm about to pass out."  (<u>Id.</u> at 74)  Plaintiff also stated she
feels "alone and in the dark" most of the time and she has so
little energy that she cannot accomplish much during the day.
(<u>Id.</u>)  In the letter, plaintiff expressed that she has suicidal
thoughts.  (<u>Id.</u>)  In addition, plaintiff complains of crying

spells, feelings of diminished self-worth, and excessive worrying.  (Id. at 48-49)

Plaintiff lives with her husband and partakes in some household chores, including running errands and writing checks. (Id. at 38, 47)  On a "good day", plaintiff will also make her bed and keep the living room and kitchen clean.  (Id. at 51) Plaintiff drives herself to errands and appointments.  (Id. at 38)  On a "bad day", plaintiff is "just mainly sitting around not doing much of anything."  (Id. at 51)  Plaintiff states she has more bad days than she has good days.  (Id. at 51)

Plaintiff cares for her two year-old granddaughter Monday through Friday from seven in the morning to about 4:30 in the afternoon.  (Id. at 45)  Plaintiff claims the child is not neglected, even on plaintiff's "bad" days.  (Id. at 51) Plaintiff spends her entire day entertaining and being entertained by her granddaughter, including playing limited games, reading books, and playing outside.  (Id. at 46, 51-52) Plaintiff naps with her grandchild two to three days a week and states that, due to plaintiff's fatigue, she would nap even if her grandchild were not present.  (Id. at 52)

Plaintiff states she does not attend movies, does not belong to any social organizations or support groups, does not like to go out with her friends, does not have any hobbies and finds it difficult to concentrate on television shows and movies.  (Id. at

5

45, 46)

### C.    Vocational Evidence

During the administrative hearing, the ALJ called Andrew B. Beale, Ph.D. ("Dr. Beale"), a vocational expert, to testify about the skill requirements necessary for plaintiff's prior job as a bank clerk.  (Id. at 55)  Plaintiff's position as a bank clerk is classified as sedentary and low-level skill, having an SVP level of 5.  (Id. at 56)  Dr. Beale stated that a person with similar limitations as the plaintiff could engage in various forms of work including, but not limited to, a mail clerk, an entry level library clerk, and simple cleaning jobs.[2]  (Id. at 56-57)

On cross-examination, Dr. Beale agreed that a person with the limitations found by Dr. Seltzer in his Mental Impairment Questionnaire would not be able to work.  (Id. at 59)

### D.    Medical Evidence

In December of 2000, one of plaintiff's doctors, Alan Seltzer, M.D., diagnosed plaintiff with moderate major depression.  (Id. at 263)  Dr. Seltzer assessed plaintiff as

---

[2]There are approximately 859 light unskilled positions for mail clerks in Delaware and over 157,000 in the national economy. (Id. at 56)  There are approximately 285 positions as an entry-level library clerk in Delaware and approximately 111,000 positions in the national economy.  (Id. at 56-57)  There are approximately 1,200 entry level cleaning jobs in Delaware and over 424,000 in the national economy.  (Id. at 57)

having a global assessment of functioning ("GAF")[3] score of 58,
reflecting moderate psychological symptoms.[4]   (Id. at 264)
American Psychiatric Ass'n., Diagnostic & Statistical Manual of
Mental Disorders ("DMS") at 34 (4th Ed. 1994).   From December
2000 to September 2003, plaintiff saw Dr. Seltzer 29 times.   (Id.
at 339-355)   In his 2000 report, the doctor opined that
plaintiff's GAF score was as high as 85 in the past year,
reflecting absent or minimal symptoms.   (Id. at 264) DSM at 34.

In March of 2002, James S. Langan, Psy.D., a board certified
clinical neuropsychologist, provided plaintiff with an
Independent Neuropsychlogical Assessment.   (Id. at 199-207)   A
full day of testing revealed that plaintiff's learning and memory
skills fell in the average range.   (Id. at 203)   Personality
testing produced an invalid profile because plaintiff's responses
showed strong evidence of symptom exaggeration.   (Id. at 205)   A
self report inventory pertaining to emotional health ("MMPI-2")
was consistent with "somatization, anxiety, depression, paranoia,
relationship stress and low motivation."   (Id. at 205)   The
report stated, however, that in terms of plaintiff's emotional

---

[3]GAF measures psychological, social and occupational
functioning levels of an individual. American Psychiatric Ass'n.,
Diagnostic & Statistical Manual of Mental Disorders ("DMS") at 32
(4th Ed. 1994).

[4]In his Mental Impairment Questionnaire completed on October
7, 2003, Dr. Seltzer gives plaintiff a GAF of 55.   (Id. at 333)
This still reflects moderate psychological symptoms.   DMS at 34.

7

functioning, the MMPI-2 validity indicators "suggested the
profile on the MMPI-2 was exaggerated." (Id. at 205)  Dr. Langan
concluded that plaintiff's main impediment to her returning to
work "seems to be the claimant's pervasive believe that she
simply cannot do what is being asked of her." (Id. at 206)  The
report states that plaintiff "presents herself as a rather
helpless and dependent individual who is quick to reject requests
made of her because she sees herself as being so unable to meet
any demands." (Id. at 206)  Dr. Langan, however, concludes that
"the objective test data would suggest otherwise and that she
could perform the tasks of her former position despite her strong
beliefs to the contrary." (Id. at 206)  The report suggests
that, "ideally," work would be on a part-time basis initially
with gradual increases in work time. (Id. at 206)  In addition,
the doctor believes plaintiff will need to continue being seen by
a psychiatrist and psychotherapist and will require support
during the initial phases of re-entering the workforce. (Id. at
206)  Dr. Langan assessed plaintiff's GAF score as 70. (Id. at
207)  This score indicates only mild symptoms. DMS at 34.

Two state agency physicians each completed a Psychological
Review Technique Form in June of 2002.[5] (D.I. 9 at 208-25, 290-
306)  The first physician found plaintiff only mildly restricted

---

[5]These reports were not used as evidence in the ALJ's
decision.

8

in activities of daily living and moderately restricted in
maintaining social functioning and concentration.  (Id. at 218)
The physician concluded that plaintiff was not significantly
limited in 16 of the 20 mental activities examined and only
moderately limited in the others.  (Id. at 221-22)  The second
physician found plaintiff mildly restricted in activities of
daily living and maintaining social functioning while only
finding plaintiff moderately restricted in maintaining
concentration.  (Id. at 300)  The second physician also found
plaintiff was not significantly limited in 16 of the 20 mental
activities and moderately limited in the four others.  (Id. at
303)

Dr. Seltzer completed a Mental Impairment Questionnaire in
October of 2003.  (Id. at 333-61)  Dr. Seltzer assessed a GAP
score of 55.  (Id. at 333)  However, Dr. Seltzer indicated that
plaintiff was in the categories of "fair" and "poor to none" for
13 of the 16 of skills required for unskilled work, including the
ability to:

> (1) remember work-like procedures; (2) understand and
> remember very short and simple instructions; (3) carry
> out very short and simple instructions; (4) maintain
> attention for two hour segment; (5) maintain regular
> attendance and be punctual within customary, usually
> strict tolerance; (6) sustain an ordinary routine
> without special supervision; (7) work in coordination
> with or proximity to others without being unduly
> distracted; (8) make simple work-related decisions; (9)
> complete a normal workday and workweek without
> interruption from psychologically based symptoms; (10)
> perform at a consistent pace without an unreasonable

9

number and length of rest periods; (11) ask simple
questions or request assistance; (12) accept
instructions and respond appropriately to criticism
from supervisors; (13) get along with co-workers or
peers without unduly distracting them or exhibiting
behavioral extremes; (14) respond appropriately to
change in a routine work setting; (15) deal with normal
work stress; and (16) be aware of normal hazards and
take appropriate precautions.

(Id. at 336)  The only explanation for these low scores was the

phrase "chronic moderately severe depression" written by the

doctor.  (Id. at 336-38)

## III. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, [are]

conclusive," and the court will set aside the Commissioner's

denial of plaintiff's claim only if it is "unsupported by

substantial evidence."  42 U.S.C. § 405(g) (2002); 5 U.S.C. §

706(2)(E) (1999); see Menswear Med. Ctr. v. Heckler, 806 F.2d

1185, 1190 (3d Cir. 1986).  As the Supreme Court has held,

"[s]ubstantial evidence is more than a mere
scintilla.  It means such relevant evidence
as a reasonable mind might accept as adequate
to support a conclusion."  Accordingly, it
"must do more than create a suspicion of the
existence of the fact to be established . . .
. [I]t must be enough to justify, if the
trial were to a jury, a refusal to direct a
verdict when the conclusion sought to be
drawn from it is one of fact for the jury."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting

NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300

(1939)).

10

The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Fed. R. Civ. P. 56:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
> Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)

(internal citations omitted). Thus, in the context of judicial review under § 405(g),

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence — particularly certain types of evidence (e.g., that offered by treating physicians) — or if it really constitutes not evidence but mere conclusion.

Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the claimant's subjective complaints of disabling pain, the Commissioner "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion

11

with medical evidence in the record." Mattullo v. Bowen, 926

F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in

disability benefit cases, 'appellate courts retain a

responsibility to scrutinize the entire record and to reverse or

remand if the [Commissioner]'s decision is not supported by

substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir.

1981)).  "A district court, after reviewing the decision of the

[Commissioner] may, under 42 U.S.C. 405(g) affirm, modify, or

reverse the [Commissioner]'s decision with or without a remand to

the [Commissioner] for rehearing." Podedworny v. Harris, 745

F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. §

423(a)(1)(D), as amended, "provides for the payment of insurance

benefits to persons who have contributed to the program and who

suffer from a physical or mental disability." Bowen v. Yuckert,

482 U.S. 137, 140 (1987).  A disability is defined as the

"inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not

12

less than 12 months[.]"   42 U.S.C. § 423(d)(1)(A) (2002).

In <u>Plummer v. Apfel</u>, 186 F.3d 422 (3d Cir. 1999), the Third

Circuit outlined the applicable statutory and regulatory process

for determining whether a disability exists:

> In order to establish a disability under
> the Social Security Act, a claimant must
> demonstrate there is some "medically
> determinable basis for an impairment that
> prevents him from engaging in any
> 'substantial gainful activity' for a
> statutory twelve-month period."   A claimant
> is considered unable to engage in any
> substantial activity "only if his physical or
> mental impairment or impairments are of such
> severity that he is not only unable to do his
> previous work but cannot, considering his
> age, education, and work experience, engage
> in any other kind of substantial gainful work
> which exists in the national economy."
>
> The Social Security Administration has
> promulgated regulations incorporating a sequential
> evaluation process for determining whether a
> claimant is under a disability.   In step one, the
> Commissioner must determine whether the claimant
> is currently engaging in substantial gainful
> activity.   If a claimant is found to be engaged in
> substantial activity, the disability claim will be
> denied.   In step two, the Commissioner must
> determine whether the claimant is suffering from a
> severe impairment.   If the claimant fails to show
> that her impairments are "severe", she is
> ineligible for disability benefits.
>
> In step three, the Commissioner compares
> the medical evidence of the claimant's
> impairment to a list of impairments presumed
> severe enough to preclude any gainful work.
> If a claimant does not suffer from a listed
> impairment or its equivalent, the analysis
> proceeds to steps four and five.   Step four
> requires the ALJ to consider whether the
> claimant retains the residual functional
> capacity to perform her past relevant work.

13

> The claimant bears the burden of
> demonstrating an inability to return to her
> past relevant work.
>
> If the claimant is unable to resume her
> former occupation, the evaluation moves to the
> final step.  At this stage, the burden of
> production shifts to the Commissioner, who must
> demonstrate the claimant is capable of performing
> other available work in order to deny a claim of
> disability.  The ALJ must show there are other
> jobs existing in significant numbers in the
> national economy which the claimant can perform,
> consistent with her medical impairments, age,
> education, past work experience, and residual
> functional capacity.  The ALJ must analyze the
> cumulative effect of all the claimant's
> impairments in determining whether she is capable
> of performing work and is not disabled.  The ALJ
> will often seek the assistance of a vocational
> expert at this fifth step.

Id. at 427-28 (internal citations omitted).  If the Commissioner

finds that a claimant is disabled or not disabled at any point in

the sequence, review does not proceed to the next step.  See 20

C.F.R. § 404.1520(a) (2002).

**B.  Application of the Five-Step Test**

In the present case, the court recognizes that the first

three steps of the five-part test to determine whether a person

is disabled are not at issue: (1) the ALJ determined that

plaintiff has not engaged in substantial gainful activity since

the alleged onset of her disability in August 2000; (2) the ALJ

qualified plaintiff's impairments as "severe" impairments; and

(3) the ALJ determined that plaintiff's impairments do not meet

or medically equal one of the medical impairments listed in 20

C.F.R. Pt. 404, Subpt. P, App. 1, that would preclude any gainful work.  Plaintiff contests the ALJ's finding regarding step four in the regulatory process.

Specifically, plaintiff challenges the ALJ's finding that she has the residual functional capacity to perform her past relevant work.  First, plaintiff claims the ALJ misconstrued Dr. Langan's report and, when properly construed, no substantial evidence exists to support the ALJ's decision.  Plaintiff charges that Dr. Langan is improperly expressing opinion based on what plaintiff is capable of in the future, as opposed to his opinion on plaintiff's current mental state.  Plaintiff states that Dr. Langan's prognosis for future work for plaintiff is based on her receiving treatment and, thus, the ALJ erred in finding that Dr. Langan concluded plaintiff is able to work presently.  Secondly, plaintiff argues that the ALJ erred by rejecting Dr. Seltzer's report.  Plaintiff argues that the ALJ mistakenly believed that Dr. Langan's report was in conflict with Dr. Seltzer's and, because the two are not actually in conflict, the ALJ had no basis to disregard Dr. Seltzer's report.  Conversely, plaintiff argues that the ALJ's decision to follow Dr. Langan's report instead of Dr. Seltzer's was erroneously based only on the preference of the ALJ.  Plaintiff claims there is not substantial evidence to support the ALJ's decision.

For the court to set aside the Commissioner's conclusion

15

that plaintiff was not under a "disability" as defined by the
Social Security Act and to grant plaintiff's motion for summary
judgment, plaintiff must show that the ALJ's findings are not
supported by substantial evidence.  The court, therefore,
recognizes that the Commissioner's decision is entitled to
substantial deference.  The court finds that the ALJ's decision
is materially defective in several respects and that it is
necessary to remand this case for further findings.

In this case, the ALJ has either ignored or rejected without
sufficient explanation the medical opinions offered by the
plaintiff's treating physician.  It is well established that "the
medical judgment of a treating physician can be rejected only on
the basis of contradictory medical evidence."  Frankenfield v.
Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Morales v. Apfel, 225
F.3d 310, 317 (3d Cir. 2000) ("A cardinal principle guiding
disability eligibility determinations is that the ALJ accord
treating physicians' reports great weight, especially 'when their
opinions reflect expert judgment based on a continuing
observation of the patient's condition over a prolonged period of
time.'")(internal citations omitted).  The Third Circuit has
stated that an ALJ cannot disregard the opinion of a treating
physician without referencing objective medical evidence
conflicting with the treating physician's opinion and explain the
reasoning for rejecting the opinion of the treating physician.

16

Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986); Kent, 710
F.2d at 115 n.5.

The ALJ considered Dr. Langan's report to be sufficient
conflicting medical evidence to reject Dr. Seltzer's medical
judgment. (D.I. 9 at 23)  However, it is not clear that Dr.
Langan's opinion is really inconsistent with Dr. Seltzer's.  It
is only by selective abstraction from Dr. Langan's report that
one could conclude Dr. Langan believed plaintiff was able to
return to work.  While the doctor does state that he "believe[s]
that the objective test data . . . suggest[s] . . . that she
could perform the tasks of her former position," he also
acknowledges, in the same sentence, plaintiff's "strong beliefs
to the contrary."  In fact, the doctor finds that plaintiff's
"biggest impediment" to returning to work is her "pervasive
belief that she simply cannot do what is being asked of her."
The doctor never concludes that this "belief" is insignificant,
rather he classifies it as an impediment to her ability to work.
While the doctor does report that the objective test data "would
suggest" plaintiff can return to work, he clearly qualifies this
belief with the fact that plaintiff will require treatment by a
psychiatrist and psychotherapist.  In addition, the doctor
recommends plaintiff re-enter the work force on a part-time
basis.  Never does the doctor explicitly state his conclusion
that plaintiff is not disabled.  He concludes with stating,

17

"[w]hile she definitely has significant psychological problems, I believe that with ample support these can be managed and do not necessarily represent a permanent disability." (D.I. 9 at 206) His report is not conclusive enough to constitute substantial evidence of conflicting medical opinions.

On remand, the Commissioner should develop Dr. Langan's opinion and find whether Dr. Langan does conclusively believe plaintiff can return to work and determine whether this conclusion is based on sound medical evidence. In addition, the Commissioner must determine when Dr. Langan believes plaintiff can return to work. If the Commissioner determines that Dr. Langan does conclude plaintiff can return to work, but only contingent on participating in therapy, the Commissioner should determine if the therapy is sufficient to control the disability. See Gross v. Heckler, 785 F.2d 1163, 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

Furthermore, assuming the report is considered conflicting evidence, the Court finds that the ALJ's opinion does not adequately explain the basis for rejecting Dr. Seltzer's opinion and accepting Dr. Langan's. The ALJ merely states that Dr. Langan's report is inconsistent substantial evidence and, therefore, the ALJ did not find Dr. Seltzer's opinion to be controlling. (D.I. 9 at 23)

18

On remand, the Commissioner should carefully consider both Dr. Seltzer's and Dr. Langan's reports and specifically discuss the basis, if any, for rejecting the opinions offered in Dr. Seltzer's report.

The ALJ pointed to other evidence to "reinforce" the view that plaintiff is not disabled.  That evidence was claimant's reports of her daily activities, including caring for her granddaughter.  It seems the ALJ rejected Dr. Seltzer's medical judgment on the basis of the ALJ's observation of the plaintiff at the hearing and the plaintiff's testimony.  This is an insufficient basis for rejecting medical opinions.  <u>Frankenfield</u>, 861 F.2d at 408 (holding that rejection of medically credited symptomology based solely on the ALJ's observation of claimant at hearing and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church, is not permissible).  The ALJ cannot "disregard this medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility."  <u>Morales</u>, 225 F.3d at 318 (internal citations omitted).

The ALJ is entitled to consider plaintiff's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills.  20 C.F.R. Pt. 404, Subpt. P, 12.00C, App. 1 (2005).  However, the court is concerned that these

19

factors were given improper weight.  The ALJ must also consider
plaintiff's ability to function outside the home, as opposed to
inside the home.  20 C.F.R. Pt. 404, Subpt. P, App. 1. Section
12.00F (2005).  On remand, the Commissioner must consider whether
plaintiff is able to function better in the structured setting of
her home as opposed to the work place.  See, e.g., Morales, 225
F.3d at 319 ("For a person . . . who suffers from an affective or
personality disorder marked by anxiety, the work environment is
completely different from home or a mental health clinic.").

## V. CONCLUSION

The court finds, for the reasons stated above, that the
Commissioner has not adequately supported and explained his
decision that plaintiff is disabled.  The case, therefore, is
remanded to the Commissioner, pursuant to sentence four of 42
U.S.C. § 405(g), for further consideration in accordance with
this opinion.